OPINION OF THE COURT
Renee R. Roth, S.
Each of the two intestate estates now before the court (the estate of Carmen Ortega and the estate of Monserrate Avila) consists of personal property having a total worth of approximately $1,000. Both estates would thus appear to present classic occasions for “voluntary administration,” i.e., the informal route to settling small estates under article 13 of the Surrogate’s Court Procedure Act (SCPA 1301 et seq. [which, among other things, dispenses with waiting periods, formal notice, bonding, commissions and accountings]). Nevertheless, a question has been raised as to whether voluntary administration by the proposed fiduciaries is available to these estates.
In the case of the Ortega estate, the sole distributee resides abroad and has named an individual who resides in this state to serve as fiduciary in her stead. In the case of the Avila estate, the sole distributee postdeceased, and the proposed fiduciary is the voluntary administrator of such distributee’s estate.
There has been no judicial comment on whether even tiny estates such as these may be denied the advantages of voluntary administration where, as here, the distributees are unable to serve personally and can act only through a designee or personal representative. Accordingly, before such question is determined, it is appropriate to review the objectives as well as the language of the statute.
Article 13 was derived from Surrogate’s Court Act article 8-B (eff Mar. 1, 1964), which expressly declared that,
“The purpose of this article is to create a summary procedure for the settlement of small estates without formal administration which will ehminate the delay and unnecessary expense now frequently *314 found in the settlement of such estates; and thereby to relieve the courts, lawyers, debtors, transfer agents and other persons from the burden of handling the details of such estates.” (Surrogate’s Court Act § 137.)
In adapting article 8-B for purposes of the SCPA, the Legislature gave no hint (either in the legislative history or the language of the statute) that it intended to retreat from its original goals in such connection. Indeed, since enactment of the SCPA, the amendments to article 13 have tended only to expand the availability of voluntary administration, for example, to testate as well as intestate estates (L 1970, ch 998, eff May 20, 1970) and, for another example, to estates of greater value (L 1996, ch 373, eff Aug. 29, 1996 [gross value of maximum “small estate” increased from $10,000 to $20,000]) and, for a third example, by allowing a nondomiciliary as well as a domiciliary to serve as fiduciary (L 1990, ch 448, eff Sept. 1, 1990).
It is observed that the standard for serving as voluntary administrator under section 1303 of article 13 is less strict than the standard applicable to other fiduciaries under the SCPA, i.e., a person in line to serve as voluntary administrator need be adult and “competent,” but need not meet the criteria for eligibility to receive letters (SCPA 707). However, the categories of persons who may serve as voluntary administrator of an intestate estate under section 1303 appear to be more circumscribed than the categories of persons who may serve as administrators (SCPA 1001). For example, letters of administration may be granted under SCPA 1001 (2) to the “fiduciary” (including a voluntary administrator [SCPA 103 (21)]) of a postdeceased sole distributee and, under SCPA 1001 (6), to the designee of a distributee. Moreover, under the provisions of section 1303 (b), the proposed fiduciaries in this case might have been able to serve as voluntary administrators if this were a testate estate in which the named executor was unavailable (see SCPA 1418). By contrast, section 1303 (a) provides that, in the case of an intestate estate, the right to act as voluntary administrator is given to
“[one of decedent’s competent, adult distributees], or, if there be no such person who will act, then to the guardian of the property of an infant, the committee of the property of any incompetent person or the conservator of the property of a conservatee who *315 is a distributee . . . , [or, in default] then to the . . . public administrator.”
Section 1303 (c) further provides that “[n]o person other than one hereinbefore mentioned can become a voluntary administrator.”
 Thus, the designee of a distributee or the fiduciary of the estate of a postdeceased distributee is not among those listed as persons who may serve as voluntary administrator of an intestate estate. Nor for that matter is a guardian under article 17-A of the SCPA (for a distributee who is mentally retarded or developmentally disabled) among the persons so enumerated.
To the extent that these omissions deny voluntary administration to estates such as the two now before the court, the salutary aims of article 13 would appear to be seriously undercut without any offsetting advantage. This is not to overlook the fact that in a case such as Ortega, the distributee technically could seek to act in her own right as voluntary administrator since under the statute she need only be a competent adult. Nevertheless, as a practical matter, such distributee’s authority as voluntary administrator would likely be at best highly difficult to exercise (whether from afar or by power of attorney), and it is therefore understandable that she would designate an individual who resides in this state to be appointed in her place. As noted above, the option to make such designation appears not to be given to her under the terms of section 1303 even though it is available for purposes of full-scale administration (SCPA 1001 [6]) or for voluntary administration of a testate estate (SCPA 1303 [b]).
The function of article 13 is remedial and by its express terms the statute is to be “liberal[ly] constru[ed]” (SCPA 1312). Nevertheless, under a fundamental principle of our jurisprudence, a court cannot in effect legislate by importing into a statute terms that are omitted from it (McKinney’s Cons Laws of NY, Book 1, Statutes § 363) even when such terms would seem to advance the legislative goal and even if such omission may have been inadvertent (see, e.g., McKuskie v Hendrickson, 128 NY 555 [1891]; Matter of Miller, 110 NY 216 [1888]; Matter of Mangan, 83 NYS2d 393 [1948]). Accordingly, these two very small estates must be consigned to the formalities and the higher filing fees of full administration.
*316 In view of the cost savings and expedition that article 13 affords small estates, a copy of this decision is being sent to the Judiciary committees of both houses of the Legislature and to the Office of Court Administration’s Surrogate’s Court Advisory Committee for consideration of an amendment to the statute that would allow the benefits of voluntary administration to be available to cases such as these.